## CRANE ET AL. v. HENSLER ET AL.

[No. 24,117. Filed February 19, 1925. Rehearing denied June 25, 1925.]

1. APPEAL.—*In term appeal, not necessary to join coparties not appealing.*—The statute expressly provides that whenever any number of coparties against whom a judgment has been rendered shall take a term appeal, it shall not be necessary for the other coparties who do not join in the appeal to be made parties to the appeal, either as appellants or appellees. p. 345.

2. APPEAL.—*Whether parties to a judgment are coparties or adversary parties determined from the pleadings, verdict or finding and the judgment.*—Whether or not parties to a judgment were coparties or adversary parties must be determined from a consideration of the pleadings, the verdict or finding and the judgment. p. 345.

3. APPEAL.—*Codefendants who did not file cross-complaints or other adversary pleadings against other defendants who took an appeal not adverse parties so as to require that they be made appellees.*—Codefendants who did not file cross-complaints

or other adversary pleadings against their codefendants, but only filed answers to the complaint, and against all of whom the plaintiffs recovered a verdict and judgment for all the relief demanded by the complaint, were not adverse to other defendants who took an appeal so as to require that they be made appellees, although they made no defense or even assisted the plaintiff to win (*Security Trust Co.* v. *Myhan,* 186 Ind. 391, overruled). · p. 345.

4. APPEAL.—*Transcript in two volumes held sufficiently identified by clerk's certificate.*—A transcript consisting of two volumes is sufficiently identified by· the clerk's certificate "that the above and foregoing transcript, consisting of two volumes, contains full, true and correct copies, or the originals,˙ of all the papers and entries in said cause required by the above and foregoing praecipe," though it is better practice to obtain an order of the court to which the appeal is to be taken designating the number of volumes of which it is to consist.  p. 346.

5. APPEAL.—*Instruction as to form of verdict not controlling in determining whether verdict was sustained by the evidence.*— An instruction as to the form of the verdict to be rendered is not controlling in determining whether the verdict was sustained by the evidence.  p. 347.

6. WILLS.—*Verdict for plaintiffs in will contest containing, a finding that instrument in question was not last will of testator cannot be set aside because it also contained finding that it was procured by undue influence, of which there was no evidence.*—Where complaint · to contest a will alleged that the testator was of unsound mind, and evidence was introduced tending to prove the allegation, a verdict finding that the instrument in question was not the last will and testament of the testator cannot be set aside because it contained a further finding that the will was procured by undue influence, of which there was no evidence.  p. 347.

7. APPEAL.—*Recital as to finding instructions held to show that all instructions are in the record.*—A recital in the record that "all instructions, whether given or refused, tendered by both sides, are now filed with the clerk," followed by instructions asked by each party, with trial judge's certificate as to those of each which were given, or refused, and instruction certified by the judge as given by the court of its own motion, sufficiently shows that all the instructions are in the record. p. 349.

8. WILLS.—*Testator's declarations or statements at times other than when executing will incompetent as evidence of undue influence.*—Testator's declarations or statements made at any other time than when engaged in executing his will are not

competent evidence of undue influence and cannot be considered in determining that issue. p. 353.

9. WILLS.—*Testator's close and intimate relations with devisees and legatees of his will would not constitute evidence of undue influence.*—That testator lived in close and intimate relations with his wife and children to whom the bulk of his property, was devised, and that relations of friendship, affection and confidence existed between him and them, would not constitute evidence that they exerted undue influence which caused him to make a will that otherwise he would not have made. p. 353.

10. WILLS.—*Undue influence must destroy testator's free agency, and operate at time of executing his will in order to vitiate it.*—Undue influence that will vitiate a will must be such as to destroy, in some degree, the free agency of the testator and constrain him to do what was against his will, but which he was unable to refuse or too weak to resist, and must have been directly connected with and operated at the time of the execution of the will. p. 354.

11. WILLS.—*Reversible error to refuse to withdraw issue of undue influence from jury when no evidence on that issue.*—It is reversible error for a trial court to refuse to withdraw from the jury the issue of undue influence when there was no evidence on that issue. p. 354.

12. APPEAL.—*Appellee's statement that refused instructions were covered by instructions given will be accepted as correct.*—Where appellee's brief asserts that refused instructions were fully covered by instructions given, and appellant has not set out the refused instructions in his brief, appellee's statement will be accepted as correct. p. 355.

13. APPEAL.—*Only those points presented by original briefs are available on petition for rehearing.*—Only those points presented by the original briefs are available on petition for rehearing. p. 355.

14. APPEAL.—*On appellee's petition for rehearing, court will not refer back to transcript to see whether appellant invited the error causing reversal.*—On appellee's petition for rehearing, the court will not refer back to the transcript to see whether or not an error was invited when neither appellant's nor appellee's original brief showed that such was the fact. p. 355.

15. WILLS.—*Relation of confidence between testator and son who was executor and beneficiary not evidence of undue influence.*—The existence of a relation of confidence between the testator and a son who was made the executor as well as beneficiary of a will that was executed in his absence would not constitute evidence that the execution of the will was procured by undue influence. p. 356.

16.  APPEAL.—*Defendants in will contest who admitted complaint was true and consented that will be set aside were not adverse parties to their codefendants so as to require that they be made appellees.*—Legatees who were also heirs of the testator that were made defendants jointly with the executor and other legatees in an action to contest the will and who merely filed answers admitting that the allegations of the complaint were true and consenting that the will be set aside, and no judgment was rendered in their favor against appellants, were not adverse parties so as to require that they be made appellees on appeal by their codefendants. p. 357.

From Miami Circuit Court; *Albert Ward,* Judge.

Action by Geneva N. Hensler and others against George W. Crane, executor of the will of Richard C. Crane, and others. From a judgment for plaintiffs, the executor and others appeal. *Reversed.*

*Hurd J. Hurst, Guy R. York* and *Albert H. Cole,* for appellants.

*Joseph N. Tillett, John F. Lawrence, James W. Noel, Hubert Hickam, Robert D. Armstrong, Russell J. Wildman* and *Alan W. Boyd,* for appellees.

### ON MOTION TO DISMISS.

PER CURIAM.—Appellees, the plaintiffs below, filed a complaint to contest the will of Richard C. Crane, deceased, alleging that he was of unsound mind, that the will was unduly executed, and that its execution was procured by undue influence, and named as defendants all the other legatees under the will, which included the appellants and thirteen other persons not made parties to this appeal. Appellants were children of the testator by his last marriage, while the appellees and the thirteen defendants who did not join in taking the appeal were his children and grandchildren, the issue of a former marriage. The will devised all the testator's real estate to appellants, and also bequeathed to them all the residue of his personal property, after the payment of a small legacy to each of the plaintiffs (appellees)

and each of the thirteen defendants not made parties here. No cross-complaints were filed, but the thirteen defendants other than appellants filed ʼanswers admitting that the allegations of the complaint were true, and consenting that the will be set aside, but asking that no costs be taxed against them. Four of said thirteen defendants who so answered were called as witnesses for the plaintiff, and each testified that the testator was of unsound mind.

A verdict in favor of the plaintiffs that the execution of the instrument in question was procured by undue influence and that it was not the last will of Richard C. Crane was returned, on which the court rendered a judgment in general terms that the instrument is not such last will. Appellants perfected a term appeal, naming in their assignment of errors only the plaintiffs below as appellees and themselves as appellants. Appellees ask to have the appeal dismissed because the thirteen defendants who filed answers admitting the allegations of the complaint, and more especially the four of ʼthem who testified as witnesses for the plaintiffs, were not named as appellees in the assignment of errors.

1. The statute expressly provides that whenever a part of any number of coparties against whom a judgment has been rendered shall take a term appeal, it shall not be necessary for the other coparties who do not join in taking it to be made parties to such appeal, either as appellants or appellees. §706 Burns 1926, §675 Burns 1914, Acts 1895 p. 179.

2, 3. Whether or not the parties below were coparties or adversary parties must be determined from a consideration of the pleadings, the verdict or finding, and the judgment. And codefendants who did not file cross-complaints or other adversary pleadings against each other, but only filed answers to the com-

plaint, and against all of whom the plaintiffs recovered a verdict and judgment for all the relief demanded by the complaint, did not cease to be coparties because some of them may have been pleased with the result, or may have made no defense, or may have assisted the plaintiff to win. *Michigan Mutual, etc., Co.* v. *Frankel* (1898), 151 Ind. 534, 50 N. E. 304. Therefore, it was not necessary for appellants, in taking a term appeal, to name as appellees any of their codefendants who had neither joined nor tendered any issue as against them, but had only filed answers of disclaimer to the complaint. So far as the case of *Security Trust Co.* v. *Myhan* (1917), 186 Ind. 391, 114 N. E. 410, may hold the contrary, it is overruled.

The motion to dismiss the appeal is overruled.

Townsend, J., absent.

Filed October 10, 1923.

## ON THE MERITS.

EWBANK, J.—Before filing their brief appellees filed a motion to dismiss this appeal, which was overruled with an opinion reported in *post* 341, 141 N. E. 51. Much of their brief and part of the time allowed them for oral argument were devoted to rearguing the questions thus decided, but they have not shown sufficient reason for setting the ruling aside, and we adhere to the opinion then expressed.

The transcript consists of two volumes, the pages of which are numbered consecutively throughout, which bear internal evidence, respectively, of reciting the beginning and the ending of the record made in the above entitled cause. The clerk certified, over the seal of the court, "that the above and foregoing transcript, consisting of two volumes, contains full, true and correct copies or the originals of all the papers and entries in said cause required by the above

and foregoing praecipe." This sufficiently identified and certified to that part of the transcript contained in the first as well as the second volume; though it would be better practice, when a transcript is to be bound in two or more volumes, to obtain an order of the court to which the cause is appealed that it be so bound, designating the number of volumes of which it is to consist. Ewbank's Manual (2d ed.) §120a.

Appellees filed a complaint of a single paragraph, seeking to contest and set aside an instrument alleged to have been admitted to probate as the will of Richard C. Crane, deceased, for the alleged reasons: (1) That it was unduly executed; (2) that its execution was procured by undue influence; and (3) that, at the time it was executed, the testator was a person of unsound mind. The answer was a general denial. That the will was signed and witnessed in proper form is admitted. No interrogatories were submitted to or answered by the jury, but it returned only a general verdict, as follows: "We, the jury, find for the plaintiffs, and find that the instrument bearing date of March 31, 1908, and purporting to be the last will and testament of Richard C. Crane was procured by the exercise of undue influence, and that said instrument is not the last will and testament of Richard C. Crane."

There was evidence fairly tending to prove that the testator was and for some years before the will was executed had been a person of unsound mind, as well as much evidence to the contrary. But, under the specification in their motion for a new trial that the verdict is not sustained by sufficient evidence and is contrary to law, appellants insist that the jury found the will to be invalid solely because procured by undue influence, and that their motion challenges the sufficiency of the evidence to prove undue influence. In support of this contention, appellants point to the fact

that by an instruction which the court gave, it submitted to the jury forms of verdict which it told them, in substance, to use, respectively: (a) In case the jury should find for the defendants; (b) in case it should find that the testator was of unsound mind and that the will was procured by undue influence; (c) in case it should find him of unsound mind, but that the will was not procured by undue influence; and (d) in case it should find that the will was procured by the exercise of undue influence, but that the testator was not of unsound mind. This instruction closed with a statement that "forms of verdict have been prepared which you will take with you to your jury room," and the verdict which was returned used the form last above referred to.

Appellants would interpret these facts as showing that the jury intended to find the testator of sound mind, while finding the will invalid because procured by undue influence, and contend that unless sustained by evidence proving undue influence, it is not sustained by any evidence at all. We may assume that the jury merely heard the instructions read (*Jones* v. *Austin* [1901], 26 Ind. App. 399, 407, 408, 59 N. E. 1082), and, in choosing the form of verdict to be used, relied upon a recollection of what the court had said in reading them. And as between three forms of verdict, each of which began with the words, "We, the jury, find for the plaintiffs," and two of which closed with the statement "that said instrument is not the last will and testament of Richard C. Crane," it cannot be assumed that the jury would infallibly choose the one which fully expressed their exact reason for finding the will invalid. An instruction as to the form of the verdict cannot be accepted as controlling in determining whether or not the verdict is sustained by the evidence. And since the complaint alleged that the testator was of unsound mind,

and evidence was introduced tending to prove that allegation, a verdict finding "for the plaintiffs, and that the instrument (in question) * * * is not the last will and testament of Richard C. Crane," cannot be set aside because it also recites a further affirmative finding that the will was procured by undue influence, where the jury did not return a finding that the testator was of sound mind, either by a recital in the verdict or by answering interrogatories.

Appellee insists that the instructions are not in the record. But following a statement that "all instructions, whether given or refused, tendered by both 7. sides, are now filed with the clerk, which said instructions are in these words," appear a series of thirty-three asked by the plaintiff, followed by a certificate of the trial judge stating which of them were given and which refused, and a memorandum of exceptions by the defendants; then by a series of twenty-seven requested by defendants, followed by a like certificate of the judge, and a like memorandum of exceptions; then by a single instruction not shown to have been asked by either party, with a certificate by the judge that "the foregoing instruction numbered 1 was given by the court of its own motion," followed by a memorandum of defendants' exception thereto. The recital in the record that "all instructions * * * are filed * * * in these words" is comprehensive enough to embrace the instruction given by the court of its own motion, and the record sufficiently shows that it contains all of the instructions given.

Appellants (defendants) tendered an instruction copied from one approved in *Stevens* v. *Leonard, Exr.* (1900), 154 Ind. 67, 71, 56 N. E. 27, 29, to the effect that there was no evidence to show that the alleged will was not duly executed, and that the only question for consideration by the jury, under the facts of the case,

was whether or not the testator, at the time he signed it, was so far of unsound mind as to make it invalid. The court refused to give this instruction, but gave a series of instructions by which it submitted the question whether or not the testator was induced by any artifice, cunning or undue influence to execute said will, when in the free use and exercise of his deliberative judgment he would not have made it, and told the jury that if the execution of this will was induced by any influence which controlled the mind of the testator, destroyed his free agency, and constrained him to do what he would not have done if such control had not been exercised, this would amount to undue influence, and that if the execution of the will by testator was procured by or on behalf of the defendants, or either of them, by the use of such undue influence, it would be the duty of the jury to return a verdict for the plaintiffs. Exceptions to the giving and refusal of the several instructions were duly reserved. Whether or not the court erred in these rulings depends upon whether or not there is any evidence in the record from which the jury would have a right to find that, notwithstanding the testator was of sound mind, the instrument in question was not his will because its execution was procured and induced by the exercise of undue influence. The will was dated March 31, 1908, when testator was seventy-three years old, and was admitted to probate January 8, 1914, upon formal proof that it was duly signed and witnessed, and that the testator at the time of its execution was of sound mind "and not under any coercion or restraint." The action to contest it was commenced more than six years afterward by two minor heirs against whom the statute of limitations had not yet run, and was tried almost seven years and a half after the will was probated, being more than thirteen years after it was executed.

One of the witnesses to the will, Albert Kittner, testified that the will was signed in the office of Judge Charles A. Cole, and that he and Judge Cole were present, and he thought the other witness; that testator came to his store and told witness he was going to make a will and asked if he would sign as one of the witnesses, and that he did so; that testator brought the will down to the store and asked the father of witness to take care of it, and he put it back in the safe until testator died, when it was taken to the county clerk. Nothing else was proved to have been done by the testator or by anybody in his presence at any specified time within two years of the date when the will was signed, except that, at a time not stated, "a short while after he made it," testator told his son, George W. Crane, that he had made a will, without telling any of its provisions, and that, about two years after it was signed, he further told the son (as the son testified) that he "had made a will and had appointed me as executor and told me where it was at," but did not tell how the will disposed of his property. This son was a child of testator's last wife, with whom he lived until his death, and he and two others of the children of this last marriage lived in houses built on their father's farm, while three or four lived at home with testator and their mother. It was not until after testator's death that he told what testator had told him. The will gave all of testator's property to his widow during widowhood, subject to which, except for the bequests of $500 to each of two daughters by a former marriage and certain bequests of $25 each to grandchildren who were the issue of the former marriage, it left all of his property, including a farm of 223 acres, said to be worth $75 per acre, or more, to the seven children of his last marriage; all of his land was described in nine different tracts by the will, and a bequest or devise was given to each of

testator's legal heirs, correctly designating each, respectively, as his widow, son or daughter, or as his grandchild, the child of a named deceased son or daughter. Testator's son George, named as executor and one of the chief beneficiaries, had been testator's business manager, living on his farm near him and farming the place for eight years before the will was made, and thereafter until testator's death. The will provided that, as executor, he was authorized to administer upon and settle the estate without giving any bond, or making or filing any inventory, or procuring any authority from or making any reports to any court, except that a brief report showing that the debts and bequests had been fully paid and the estate settled should be filed upon final settlement. The will recited that certain improvements on the lands devised to George had been "placed by my son George at his own expense," and there was no evidence to the contrary. The part of the farm devised to George consisted of three tracts, in three different quarter sections, including a strip south of the highway that was eighty rods long but only eight rods wide, and a twelve-acre tract across the road north of it, and twenty acres lying half a mile north of the road, with a lane one rod wide connecting it with the twelve acres, such lands separating those devised to four of the other children from the tracts devised to the remaining two. He had purchased, before the death of his former wife, all of the land he owned thirty-five years later when he died. His last wife, a neighbor's daughter, married him after a courtship of only two weeks, and had lived with him thirty years and borne him seven children when the will was made. He was forty-three years old when they were married, and she was younger, but her age does not appear. About three years before the will was signed, testator's son, Will Crane, underwent a surgical operation, and for some

months thereafter was afflicted with an ailment from which pus was discharged that had a bad odor, and, after paying others to care for him as long as he could hire anybody to do so, testator caused him to be sent to the county poor asylum, where he died a few weeks later. During his last illness, a week or two before he died, when his daughter, son-in-law and a grandchild called to see him, testator said "Now get that and let Lief read it," but his wife told him he "must be still. You must not talk." But the evidence is that immediately afterward, he called for his deceased wife, and then spoke of his obituary being read soon, and there was no showing what it was he had wanted to have read, the will being at the store, in the city of Peru, a dozen miles away. Some statements made by the testator many years before the will was made concerning the manner in which a father ought to divide his property and how he expected to divide his own, and concerning what influence his family exerted to keep him from taking his son home instead of sending him to the poor house, were recited by witnesses who testified that he was of unsound mind.

Whatever may be the rule in other states, it has been the established rule in Indiana for many years that the declarations or statements of a testator made at any other time than when he is engaged in the execution of the instrument claimed to be his will, are not competent as evidence that the will was procured by undue influence, and cannot be considered in determining that issue. *Hayes* v. *West* (1871), 37 Ind. 21, 24; *Vanvalkenburg* v. *Vanvalkenburg* (1883), 90 Ind. 433, 438; *Conway* v. *Vizzard* (1890), 122 Ind. 266, 268, 23 N. E. 771; *Westfall* v. *Wait* (1905), 165 Ind. 353, 360, 73 N. E. 1089, 6 Ann. Cas. 788; *Ditton* v. *Hart* (1911), 175 Ind. 181, 189, 93 N. E. 961; *Rob-*

*bins, Exr.,* v. *Fugit* (1920), 189 Ind. 165, 168, 126 N. E. 321; *Emry* v. *Beaver* (1922), 192 Ind. 471, 137 N. E. 55. ·Neither do the facts that testator lived in close and intimate relations with his wife and the children to whom the bulk of his property was devised, and that relations of friendship, affection and confidence existed between him and them, constitute evidence that they unlawfully exerted an undue influence which induced him to make a will that otherwise he would not have made. *Goodbar* v. *Lidikey* (1893), 136 Ind. 1, 8, 35 N. E. 691, 43 Am. St. 296; *Stamets* v. *Mitchenor* (1905), 165 Ind. 672, 675, 676, 75 N. E. 579.

The foregoing is all the evidence that counsel for appellees have pointed out on which they rely as proof that the execution of the will was procured or induced by undue influence, except the declarations said to have been made by the testator, himself. Disregarding, as we must, such declarations made long before and long after the will was executed, and assigning only its proper effect to the proof that testator and members of his family to whom he devised the bulk of his property lived together in intimate relations of mutual confidence, the facts proved did not constitute any evidence whatever of undue influence for which the will should be set aside. The undue influence that will vitiate a will must be such as to destroy, in some degree, the free agency of the testator and constrain him to do what is against his will, but what he is unable to refuse, or is too weak to resist. *Robb* v. *Graham* (1873), 43 Ind. 1, 12. And it must be directly connected with the execution of the will and operate at the time it is made with such compelling force that the apparent testator is only the instrument by which the overmastering desire of another is expressed. *Wiley* v. *Gordon* (1914), 181 Ind. 252, 266, 104 N. E. 500. Nothing of the kind was proved, either directly or in-

directly, by the evidence above set out. The trial court erred in refusing to withdraw the issue of undue influence from the jury, and in giving instructions by which they were told they might find for the plaintiff on that issue if they found that certain facts had been proved.

The brief for appellee asserts that the instructions asked by defendant which the court refused to give were fully covered by other instructions that were 12. given. And since appellants have not set out in their brief the instructions thus referred to, we shall accept the statement as correct. Other errors complained of may not be committed when the case is again tried.

For the errors committed in refusing to withdraw the issue of undue influence from the jury and in giving instructions by which it was expressly submitted for their consideration, the judgment is reversed, with directions to sustain the motion of defendants for a new trial.

### ON PETITION FOR REHEARING.

EWBANK, J.—Appellees say that appellants tendered instructions upon the issue of undue influence in the same series and under the same tender as the 13, 14. instruction by which the trial court was asked to withdraw that issue from the jury, and thereby invited the court to commit the error, if any, in refusing to withdraw such issue, and in submitting it to the jury. But neither the appellants nor the appellees, in their briefs on the original hearing, set out any instructions given at the request of appellants which related to the issue of undue influence, nor any request by appellants to give the instruction No. 2 as one of a series of instructions asked, nor did appellees in their statement of the record, points and authorities, or else-

where in their said brief, so far as we can ascertain by a careful re-examination thereof, urge or even suggest the point on which they now rely as cause for a rehearing. It is only those points presented by the original briefs which are available on petition for rehearing. And where the statement of the record in appellant's brief, as amended and supplemented by the statement in appellee's brief, failed to show that a request for instructions relating to the issue of undue influence was made, or that the instructions so requested were given, this court will not refer back to the transcript on petition for a rehearing to see whether or not an error in refusing to give an instruction was waived by reason of a request for instructions not set out in the briefs. Rules 22 and 23 Supreme Court. *Blough* v. *Parry* (1896), 144 Ind. 463, 483, 43 N. E. 560; *Milburn* v. *Phillips* (1893), 136 Ind. 680, 699, 36 N. E. 360; *City of Evansville* v. *Senhenn* (1897), 151 Ind. 42, 62, 51 N. E. 88, 41 L. R. A. 728, 68 Am. St. 218.

After a careful reconsideration, the court is convinced that the evidence did not justify submitting the issue of undue influence to the jury. The existence of a relation of confidence between the testator and a son who was made the executor as well as a beneficiary under a will that had been executed when he was not present, did not constitute evidence that the execution of the will was procured by undue influence. *Scarbrough* v. *Scarbrough* (1913), 185 Ala. 468, 64 So. 105; *In re Purcell's Estate* (1912), 164 Cal. 300, 128 Pac. 932; *Snodgrass* v. *Smith* (1908), 42 Col. 60, 94 Pac. 312, 15 Ann. Cas. 548; *McCune* v. *Reynolds* (1919), 288 Ill. 188, 123 N. E. 317; *Succession of Jones* (1907), 120 La. 986, 45 So. 965; *In re Turner's Will* (1908), 51 Ore. 1, 93 Pac. 461; *In re Cook's Estate* (1918), 71 Okla. 94, 175 Pac. 507.

The motion to dismiss the appeal was on the ground

that the assignment of errors failed to name as appellees certain persons who, together with appellants, were jointly made defendants to the action, as being, like appellants and appellees, "legatees under the provisions of said alleged last will and testament," as well as constituting, together with appellants and appellees, "all the heirs at law of said" testator. No issue was joined as between them and appellants, they having merely filed answers admitting that the allegations of the complaint were true and consenting that the will be set aside.    Persons who were sued jointly as defendants, and against whom judgment was rendered jointly, granting all the relief prayed for in the complaint, but who filed no pleadings whatever as · against each other, cannot be deemed adverse parties so as to require that part of them, in appealing from such judgment, shall name the others as appellees, merely because the latter filed a disclaimer of adverse interest as against the plaintiff.    No judgment having been rendered in their favor against appellants, they had no such legal interest adverse to appellants as could require them to be joined as appellees in an appeal from the judgment recovered by the plaintiffs below.    *Clements* v. *Davis* (1900), 155 Ind. 624, 626, 57 N. E. 905.

The petition for a rehearing is overruled.