# CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY *v.* GALLION.

[No. 5,899.   Filed March 12, 1907.]

1.   APPEAL.—*Weighing Evidence.*—The Appellate Court will not weigh conflicting evidence. p. 606.

2.   RAILROADS.—*Highway Crossings.—Negligence.—Contributory. —Question for Jury.*—Whether a railroad company was guilty of negligence in permitting a rut to remain in a highway crossing, and whether plaintiff was guilty of contributory negligence in failing to observe same when he drove into it with a load of sewer-pipe in the daytime, thereby causing his wagon to tip and the sewer-pipe to fall over and seriously injure him, are questions for the jury. p. 609.

3.   NEGLIGENCE.—*Contributory.—Knowledge of Defects.*—Knowledge of a defect in a highway crossing, by a person driving over the same in the daytime, does not conclusively render him guilty of contributory negligence. p. 610.

4. NEGLIGENCE. — *Contributory.* — *Knowledge of Defects.*—If a known danger is so great that an ordinarily prudent person would not incur the risk thereof, the person injured thereby is guilty of contributory negligence as a matter of law. p. 610.

5. TRIAL.—*Answers to Interrogatories to Jury.*—*Contributory Negligence.*—Answers to interrogatories to the jury showing that plaintiff, while riding on the top of a sewer-pipe, with one foot within same, such tile standing uprightly on the top of another, was injured because one wheel of his wagon fell into a rut, thereby causing the tile to fall on him, and that, except for such rut, the injury would not have occurred, are not in irreconcilable conflict with a general verdict for plaintiff. p. 610.

6. SAME.—*Instructions.*—*Contributory Negligence.*—*Question for Jury.*—It is not error to refuse an instruction charging that certain specific acts constitute contributory negligence as a matter of law, but all of the facts involved in plaintiff's conduct should be considered, the question being one of fact for the jury. p. 611.

7. SAME.—*Instructions.*—*Contributory Negligence.*—*Question for Jury.*—It is not error to refuse to instruct the jury that riding on a sewer-pipe, loaded in such manner that if the wheel of the wagon should drop into a rut, or if the wagon should go down an incline, such pipe would fall, constitutes the person riding guilty of contributory negligence as a matter of law, since the question is whether an ordinarily prudent man would so ride, and such question is for the jury. p. 612.

8. SAME.—*Instructions.*—*Duplication of.*—Where requested instructions have been substantially given in others, they should be refused. p. 612.

From Clay Circuit Court; *Presley O. Colliver,* Judge.

Action by Elias P. Gallion against the Chicago & Eastern Illinois Railroad Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*George A. Knight,* for appellant.

*G. S. Payne, A. C. Miller* and *Wymond J. Beckett,* for appellee.

COMSTOCK, J.—Action to recover damages for injuries sustained by appellee at a highway crossing by the alleged negligence of appellant in failing to restore and maintain said crossing in a safe condition for public travel. A ver-

dict for $5,000 was returned, and judgment rendered thereon. The motions of appellant for a new trial and for judgment on the answers to interrogatories, notwithstanding the general verdict, were overruled and these rulings are assigned as error.

Under the first alleged error counsel challenges the sufficiency of the evidence to sustain the verdict and the refusal of the court to give instructions six and seven and three-fourths requested.

Appellant's negligence is not questioned; but it is earnestly argued that appellee was guilty of contributory negligence, which was the cause of the injury. In its verdict the jury found that appellant was guilty of negligence and that appellee was not guilty of contributory negligence. If there was any evidence to sustain such verdict, this court cannot disturb it. Appellee testified that on August 27, 1902, he hauled a load of sewer-pipe for John LaCleve. He started from Seelyville with a two-horse wagon, the bed of said wagon being three feet wide and three feet deep. He came to Brazil from Seelyville on the National road. He crossed the Chicago & Eastern Illinois railroad at the ice plant, where the railroad crossed the National road, and turned south. He made no observations of the crossing or road. There was a street car coming behind him, and the horse on the side nearest the street car was somewhat afraid of the car, and he noticed the car and the horses, but not the road. He got the sewer-pipe north of town and drove south, then west until he came within twelve or fifteen feet of the Chicago & Eastern Illinois railroad. He stopped and looked east and west, along the east side at the beginning of the grade, for a train, but neither saw nor heard any. He then started up the grade to cross the track. By the time he got on the railroad he saw a train of cars two hundred or three hundred yards from him, and gave the horses a little slap with the lines, to cause them to pull over in a hurry. The wagon as it went over dropped down

suddenly. This jerked one of the tiles off, and in falling it hit the rear horse on the hip, and rolled to the ground and appellee with it; the tile, in falling, crushing his foot. The train passed just as he was about to strike the ground. He did not know the kind nor the speed of the train. The Chicago & Eastern Illinois railroad extends from Brazil southwest to Terre Haute. His team was gentle and easily managed. He had the lines up in his hands tolerably tight as he crossed, and was driving carefully. Had the tiles setting two tiers deep and had a seat-board laid across the back of the top tiles, and was sitting on that with both feet inside the tile till he got to the railroad. As he came up near the track he took his left foot out of the tile and placed it on the wagon bed to steady himself, and then drove up to the road in that position. He did not see the jump-off next to the west rail, and had no knowledge of it until he felt the wagon drop. He was trying to get over the road to keep the train from striking him, and the wagon suddenly dropped and jerked him off. His horses moved in a fast walk when he slapped them with the reins. There were four tiles sitting in the wagon with the bell ends up and four more sitting right on top, one on each side. One end of the tile had what is called the bell or flange, two or three inches deep, and the lower end of the top tile fitted down in the bell. The flange is just wide enough to receive the other end of the tile. The tiles are two feet across and two feet deep. They are from one and one-quarter to one and one-half inches thick. They weigh from two hundred sixty to two hundred eighty pounds each. The bottom tiles are two feet long, and the top tiles extended twelve inches above the sideboards of the wagon-bed. He had hauled tiles before, and that is the way he had been hauling them. He could put only eight in a wagon-bed.

On cross-examination appellee said: He got to this crossing coming east on the day of the accident about 2 o'clock p. m. It was a clear, nice day. He had good eyesight, and

could see where he was driving. Could notice objects along the road ahead of him. There was nothing to hinder him from seeing the character of the crossing if he were looking. He did not notice it as he approached, and did not recollect if there was an off-set there. The horses were a little afraid of the car. He paid no attention to the crossing on that side of the road as he approached it, but got over it all right. The wagon was empty. He drove to the factory, got the eight sewer-pipes, put four in the bottom of the wagon-bed and four on top (as heretofore described). The wagon-bed was nine feet long, and four tiles were all it would hold in the bottom. They sat in the middle of the bed, nothing on either side of them to prevent them from sliding around. He sat on the rear edge or back part of one of the front tiles and put his feet on the inside of the tile, and rode in that position from the factory until he reached the crossing. He came down to the crossing from the north and made a curve to get over the crossing onto the main highway. There was quite a little set-off there. Before crossing he took his left foot out of the tile and set it on the side of the wagon-bed. His other leg remained in the tile. He knew the tiles were liable to topple and fall going up hill. As far as that was concerned, he stated that any tiles were likely to roll, and the proper way would be to set them on end; that would be the safer way. The board he was sitting on was from six to eight inches wide and as long as the width of the wagon-bed. He got to the crossing between 4 and 5 o'clock, in broad daylight. He did not stop after he got on top of the hill, but drove right ahead across the track, and saw the train coming, three or four hundred yards away. The horses were then on the track. He still had one foot inside of the tile when the wagon dropped and jerked him forward. The tile was so close to the front of the wagon-bed that the only place he could put it was at the side. He generally loaded sewer-pipe by setting them on the end. He had crossed the crossing from two to

four times before the accident. In the spring he had
hauled a load of brick over it. Crossed at the time
of the accident within six or eight feet of the north
side. Was five or six feet from the north end of the
plank. It was his right foot that he lost. If the pipe
tipped he had no means of bracing himself. He had noth-
ing to hold to except the tile. He took his left foot out of
the tile when the horses were fifteen or twenty feet from
the track. He had frequently hauled tiles before. Tiles
loaded as these were would be liable to topple and fall
off if the fore wheel went into rut or abrupt place, and
they were liable to fall off going down a steep hill. He
had passed safely over this crossing before, hauling tiles,
and rode over the same way.

Appellee testified that he did not know of the existence
of this hole or rut, at the west end of the rail, in the high-
way at the railroad crossing. It is contended by
appellant that appellee should have known, by the
exercise of ordinary care, of the condition at the
crossing. Appellee gave reasons of more or less force why
it had escaped his observation. The jury might have ac-
cepted his explanation as sufficient to acquit him of con-
tributory negligence. It was for the jury to pass upon the
reasonableness of appellee's story and the credibility and
weight of his testimony, as it was also the province of the
jury to determine the question of negligence upon all the
evidence. The fact that the jury concluded that the con-
duct of appellee was that of an ordinarily prudent person,
and that he was free from contributory negligence, makes
it apparent from the earnest argument of appellant's coun-
sel that more than one inference might be drawn by reason-
able minds from the evidence and calls for the observance
of the rule to submit the question of negligence, under such
conditions, to the jury. *Wabash R. Co.* v. *Biddle* (1901),
27 Ind. App. 161, and cases cited.

In the absence of evidence denying knowledge of the defect in the highway and his reasons for lack of knowledge, the jury might not have found in appellee's favor, yet in *Evansville, etc., R. Co.* v. *Carvener* (1887), 113 Ind. 51, in which plaintiff knew that the track of the railroad was nine inches above the surface of the highway, and with this knowledge encountered the obstacle, it was held that this did not of itself constitute contributory negligence. "The fact of using a highway, after obtaining such knowledge, does not necessarily and conclusively establish negligence, contributing to an injury resulting from a defect therein." 1 Shearman & Redfield, Negligence (4th ed.), §101.

In *Evansville, etc., R. Co.* v. *Crist* (1889), 116 Ind. 446, 453, the court say: "But while it is true that knowledge of danger does not necessarily defeat a recovery, yet in all cases it is an important factor, and in many the character of the knowledge and the nature of the danger may be such as to constitute contributory negligence. If the danger is so near and so great that a prudent man, knowing of its existence, would not assume the hazard of encountering it, then it does constitute such contributory negligence as will defeat a recovery." See, also *Seybold* v. *Terre Haute, etc., R. Co.* (1897), 18 Ind. App. 367; *Chicago, etc., R. Co.* v. *Leachman* (1903), 161 Ind. 512.

The answers to interrogatories show that the plaintiff did not occupy a dangerous position, sitting on the sewer-pipe, with one leg inside the pipe, while crossing the defendant's track; that a reasonably prudent and careful man would have occupied the same position as that occupied by plaintiff; that he knew that a sewer-pipe sitting on the end of another sewer-pipe was likely and liable to fall out of the wagon if the fore wheel of the wagon dropped into a rut or chuck in the highway, three to twelve inches deep, or while the wagon went down an in-

cline on the highway; that the proximate cause of plaintiff's injury was not due to the carelessness of the plaintiff in sitting on the sewer-pipe, with one leg inside the pipe, while crossing the defendant's track; that the accident would have happened to plaintiff simply on account of the condition of the highway at the crossing; that plaintiff would not have fallen from his wagon if he had been standing on the floor of his wagon-bed or sitting on the seat extending across the wagon-bed; that the position occupied by the plaintiff did not cause him to fall off the wagon.

Interrogatory eight is as follows: "Would the accident to plaintiff have happened simply on account of the condition of the highway at the crossing, except by reason of the manner in which his wagon was loaded and his own position on the sewer-pipe? A. Yes." While the meaning of this interrogatory and answer may not be clear, we think the jury intended to say that the accident would have happened on account of the condition of the highway without reference to the manner in which his wagon was loaded and his own position on the sewer-pipe. So far as these answers are not in conflict with one another, they are not irreconcilably in conflict with the general verdict, and appellant's motion for judgment was therefore properly overruled.

Appellant complains of the refusal of the court to give instructions six and seven and three-fourths, respectively, requested by it. Instruction six is as follows: "If you find from the evidence that the plaintiff was injured at the point where defendant's road crossed a public highway, and that said injuries were caused by a tile or a sewer-pipe's falling from his wagon upon and injuring him while in the act of crossing defendant's track at such crossing, and that said tile or sewer-pipe was placed on said wagon in an unsafe or insecure position, where it would be likely to fall in passing over uneven or sloping places on said highway, then I instruct you that the plaintiff cannot recover in this action." This instruction declared

as a matter of law that certain acts constituted contributory negligence. It was for the jury to take into consideration all the facts in reference to the knowledge and conduct of appellee as shown from the evidence and from them determine whether he was guilty of contributory negligence.

Instruction seven and three-fourths specified the position of the plaintiff and the manner in which the tile were placed in the wagon, and instructed the jury that if such

7.  pipe were liable to fall out of the wagon at places where the highway was rough or uneven, or in going down hill, and that plaintiff knew of this danger, and that the accident was caused by the left front wheel of plaintiff's wagon dropping into a rut or depression in the highway, thereby causing the pipe on which plaintiff was sitting to fall off the wagon and injure him, the plaintiff was guilty of contributory negligence as a matter of law, leaving out of consideration what a reasonably prudent man would do under like circumstances.

In instruction three, given at the request of appellant, the jury was told that all of the material allegations in the complaint charging negligence must be proved by a

8.  fair preponderance of the evidence, and in instruction seven, also given at the request of appellant, the jury was told that if it should find from the evidence that the highway, where it crossed defendant's track, sloped to the west or was down hill, and find that there was an off-set of from six to twelve inches at the west of the west rail at the time plaintiff was injured, and that plaintiff's wagon was loaded with sewer-pipes, and that plaintiff had sewer-pipes sitting on their ends and resting on other sewer-pipes in said wagon, on which sewer-pipes so sitting on their ends the plaintiff was sitting, and should find from the evidence that said pipes on which plaintiff was sitting at the time of the accident were liable to tip and fall over in passing over the highway at a place where it sloped or was going down hill or where the high-

way was uneven, and that such sewer-pipes were unsafely loaded, or did not afford a safe place for plaintiff to ride, and that said sewer-pipes fell because of the slope in the road because of their unsafe position in said wagon while passing over said crossing, and that plaintiff was injured because said sewer-pipe fell upon him, then he could not recover. The instructions refused were correctly refused, and, in view of the instructions last named, appellant has no cause to complain.

There is evidence fairly tending to sustain the verdict, and the judgment is affirmed.

Myers, C. J., Roby, P. J., Hadley and Watson, JJ., concur. Rabb, J., absent.