MEADOWLARK FARMS, INC. *v.* HARVEY A. WARKEN

[No. 1-1276A243. Filed May 22, 1978.]

*Gus Sacopulos, Sacopulos and Crawford,* of Terre Haute; for appellant.

*Hansford C. Mann, Mann, Chaney, Johnson, Hicks & Goodwin,* of Terre Haute, for appellee.

LYBROOK, P.J. — Appellant-defendant, Meadowlark Farms, Inc. (Meadowlark), appeals from a verdict granting appellee-plaintiff, Harvey A. Warken (Warken), damages in the sum of $125,000 for injuries to his arm sustained from a fall into a corn auger located on Meadowlark's premises.

*FACTS*:

Warken, a high school graduate, farmed for forty years before the accident. In addition to his hog business, during the years 1966 through 1971 and again in 1973, Warken sharecropped under a lease agreement with Meadowlark, raising soybeans and corn. He regularly delivered the soybeans to an elevator in Terre Haute and the corn to the Meadowlark facilities.

Warken arrived at Meadowlark's premises on October 23, 1973, and followed his regular procedure for delivering a truckload of corn. He backed up the Ford truck to the tire dumphopper, raised the truck bed about halfway, started the tractor which operated the auger, and finally, opened the endgate to let the corn run out. The corn flowed into the tire dumphopper while the auger lifted the corn up and into the grain bin. After emptying that load, Warken returned in a Chevrolet truck with another load and repeated the dumping procedure. At the time of the injury Warken was standing on crushed rock mixed with some corn behind the truck on the driver's side. The corn was coming a little too fast, and to prevent it from spilling over the tire he attempted to shut down the truck's endgate. By extending himself to reach the endgate handle, approximately four feet away and two feet above the

ground, he lost his balance, his feet slipped, and he fell. His left arm was immediately caught in the exposed auger.

Meadowlark had used this tire dumphopper since 1966. In November, 1969, an employee at Meadowlark had slipped while standing on the back of a truck, and severely injured his feet in the auger. Two years before Warken's accident, the resident farm manager at Meadowlark had been instructed by another of Meadowlark's agents to construct a cover for the exposed end of the auger as a safety precaution. The resident farm manager did construct such a cover and placed it on the auger. The testimony of the other farmers who had delivered grain to the facilities at Meadowlark was consistent in that, before Warken's injury, none had ever seen a cover over the auger, or knew that one was available.

The verdict of the jury indicates a finding that Meadowlark was negligent, either in failing to próvide a protective barrier over the moving parts of the auger, or in removing the protective barrier over the auger, or in both activities, and that Warken was not guilty of contributory negligence nor assumed the risk of injury from the dangers presented by the unguarded auger.

We affirm.

*ISSUES PRESENTED FOR REVIEW:*

The issues presented by this appeal are as follows:[1]

(I)     Whether the trial court erred in refusing Meadowlark's motion for judgment on the evidence at the close of Warken's case.

(II)    Whether the trial court erred in refusing Meadowlark's motion for judgment on the evidence at the close of all the evidence.

(III)   Whether there was sufficient evidence for the jury to conclude that the breach of a duty owed to Warken by Meadowlark was the proximate cause of Warken's injuries.

---

1. For convenience Meadowlark's list of 12 issues has been regrouped and consolidated into the nine issues listed herein.

(IV)    Whether Warken was guilty as a matter of law of contributory negligence that proximately caused or contributed to cause his injuries.

(V)     Whether Warken assumed or incurred the risk of injury as a matter of law.

(VI)    Whether the trial court erred in refusing to give Meadowlark's tendered final instructions 2, 3, and preliminary instruction 9.

(VII)   Whether the trial court erred in refusing to give Meadowlark's tendered instructions 4, 5, 6, and 7.

(VIII)  Whether the trial court erred in restricting cross-examination of Warken with respect to alternative methods available to him in the preforming of his task at the time of his injury, when Warken's counsel did not object to such line of questioning.

(IX)    Whether the trial court erred in giving its final instruction number 14.

## I.

Meadowlark first contends that the trial court erred in overruling Meadowlark's motion for judgment on the evidence at the close of Warken's case. However, Meadowlark waived any error in the overruling of its motion for a judgment on the evidence at the close of the presentation of Warken's evidence when Meadowlark proceeded to offer evidence in its own behalf. *Lamb v. York* (1969), 252 Ind. 252, 247 N.E.2d 197; Indiana Rules of Trial Procedure, TR. 50(A).

## II.

Meadowlark further contends that the trial court erred in denying its motion for judgment on the evidence at the close of all the evidence.

A ruling on a motion for judgment on the evidence is limited to a consideration of the evidence and all reasonable inferences therefrom, most favorable to the party against whom the motion is made.

"The quantum of evidence necessary for a plaintiff to avoid a directed verdict at the close of his evidence has been determined by our Supreme Court to be *any* evidence or legitimate inference therefrom tending to support at least one of the plaintiff's allegations." (Original emphasis). *Mamula v. Ford Motor Co.* (1971), 150 Ind. App. 179, 181, 275 N.E.2d 849, 851; TR. 50.

When passing on the motion presented at the close of all the evidence, the trial court was required to determine if there was *some* evidence of negligence on the part of the defendant which the jury was entitled to consider.

The relation of the parties to each other establishes the duty owed by Meadowlark. Warken entered upon the premises by express invitation of the owner, Meadowlark, to deliver the share of his crops owed to Meadowlark. It is undisputed that Warken was a business invitee. See *Standard Oil Co. v. Scoville* (1961), 132 Ind. App. 521, 175 N.E.2d 711.

Our Supreme Court discussed the duty of the landowner or occupier to the invitee in *Hammond v. Allegretti* (1974), 262 Ind. 82, 87, 311 N.E.2d 821, 825:

"[A] landowner or occupier is under a duty to exercise reasonable care for the protection of invitees on the business premises. This duty arises as a *matter of law*. The question of whether the defendant-landowner exercised the requisite degree of care is strictly a question for the trier of fact." (Original emphasis).

The duty imposed upon Meadowlark was to exercise reasonable care in maintaining its business premises in a reasonably safe condition, and to take reasonable precautions to protect the invitee. This duty applies as a matter of law in all cases arising out of the invitor-invitee context. *Hammond, supra; Hobby Shops, Inc. v. Drudy* (1974), 161 Ind. App. 699, 317 N.E.2d 473.

Meadowlark's legal liability is a question to be determined by the jury from a consideration of the circumstances, the premises, and actions taken or actions not taken.[2] *Hammond, supra.*

---

2. Legal liability may be affected also by a lack of proximate cause, or a finding of contributory negligence or assumed risk, issues which will be addressed subsequently.

Meadowlark owned and provided the tire dumphopper, auger, and bins to which farmers delivered grain on the Meadowlark premises. At times, its agents directed the farmers, including Warken, to deliver their grain to these bins. Those delivering corn operated the equipment without assistance from Meadowlark personnel. A Meadowlark employee had previously been severely injured in the auger. The farm manager was ordered to construct a protective shield to cover the moving parts of the auger as a safety precaution. This cover, as designed, did provide safety; however, it was not in place at the time of Warken's accident.

We cannot say that there is a total absence of evidence or legitimate inferences in favor of Warken upon the issue of negligence, or that the evidence is without conflict and susceptible of but one inference in favor of Meadowlark.

### III.

Evidence of negligence must be accompanied by some evidence that the negligence proximately caused the injury. Meadowlark argues that failure to keep the auger covered did not cause Warken's injury, and, even if this is found to be a cause of the injury, that Warken's actions were an independent responsible agency which interrupted the line of causation and extinguished its liability.

The question whether the defendant's conduct caused the plaintiff's injury is a question of fact.

> "A cause is a necessary antecedent: in a very real and practical sense, the term embraces all things which have so far contributed to the result that without them, it would not have occurred. It covers not only positive acts and physical forces, but also preexisting passive conditions which have played a material part in bringing about the event." W. Prosser, The Law of Torts, 237 (4th Ed. 1971).

At times, many causes will influence a result, but as a matter of public policy, courts limit liability for negligent acts to the conduct which proximately caused the injury. Factual causation becomes proximate causation under the test of foreseeability. *Swanson v. Slagal* (1937), 212 Ind. 394, 8 N.E.2d 993; *see, State v. Dwenger* (1976), 168 Ind. App. 90, 341 N.E.2d 776; *Galbreath v. Engineering Con-*

*struction Corp.* (1971), 149 Ind. App. 347, 273 N.E.2d 121; *Allison v. Huber, Hunt & Nichols, Inc.* (1977), 173 Ind. App. 41, 362 N.E.2d 193.

"One's negligence may furnish a mere condition for the incidence of another's negligence and allow the original actor to escape liability. *Schroer v. Funk & Sons, Inc.* (1968), 142 Ind. App. 223, 233 N.E.2d 680; *Slinkard v. Babb* (1953), 125 Ind. App. 76, 112 N.E.2d 876. If true, such negligence was not the active or efficient cause of the resulting injury. *However, the ultimate test of legal proximate causation is the reasonable foreseeability.* The assertion of an intervening, superseding cause fails to alter this test. *City of Indianapolis v. Falvey* (1973), [156] Ind. App. [366], 296 N.E.2d 896. For this Court to affirm a positive finding of proximate causation, we need only conclude that the evidence presented supports a reasonable conclusion that the original wrong was one of the proximate rather than remote causes. *Swanson v. Slagal* (1937), 212 Ind. 394, 8 N.E.2d 993; *Evansville & Ohio Valley Ry. Co. v. Woosely* (1950), 120 Ind. App. 570, 93 N.E.2d 355." *Dreibelbis v. Bennett* (1974), [162] Ind. App. [414], 319 N.E.2d 634, 638. (Emphasis added).

It is not necessary that the defendant's negligence be the sole proximate cause. *Krohn v. Shidler* (1966), 140 Ind. App. 175, 221 N.E.2d 817; *Stauffer v. Ely* (1971), 149 Ind. App. 93, 270 N.E.2d 889; *Dreibelbis, supra.* Where two causes proximately cause an injury, one of which is attributable to negligence while the other is not, a party will be liable to the extent of his negligent act, in the absence of a finding of negligence on the part of the injured party. *Krohn, supra; Board of Commissioners v. Sisson* (1891), 2 Ind. App. 311, 28 N.E. 374; 21 I.L.E. Negligence § 66 (Supp. 1977).

A continuous and foreseeable connection existed between the dangerous condition of the equipment and the injury. Warken's slip and fall was an additional cause of the injury, but it was a concurrent or contributing cause, the occurrence of which might have been reasonably foreseen. In this case, the chain of causation from the original wrongful act to the injury was not broken, the fall was not a superseding cause, and the two events merely combined to cause the injury.

"Generally, where harmful consequences are brought about by intervening independent forces the operation of which might have been reasonably foreseen, then the chain of causation extending

from the original wrongful act to the injury is not broken by the intervening and independent forces and the original wrongful act is treated as a proximate cause." *New York Central R. Co. v. Cavinder* (1965), 141 Ind. App. 42, 50, 211 N.E.2d 502, 508; *New York, Chic. & St. L. R.R. v. Hamlin* (1907), 170 Ind. 20, 83 N.E. 343.

There was some evidence presented by Warken from which the jury could conclude that the negligent omission to keep a protective shield over the exposed end of the auger contributed to the injury to such a degree that in the absence of such negligence the injurious result could not have occurred. There was also some evidence from which the jury could find that the resulting injury was reasonably foreseeable.

We find that there was some evidence, or reasonable inferences from such evidence, on the issue of negligence and proximate cause. The trial court did not err by refusing to grant Meadowlark's motion for judgment on the evidence.

## IV.

Meadowlark further contends that Warken was guilty of contributory negligence as a matter of law and that therefore the trial court erred in denying it a directed verdict.

The rule in relation to contributory negligence has been stated by this court in *Stallings v. Dick* (1965), 139 Ind. App. 118 at 124-125, 210 N.E.2d 82, at 86, as follows:

"The prevailing Indiana rule is the contributory negligence is generally a question of fact for the jury to determine where the facts are such as to be subject to more than one reasonable inference. However, where the facts are undisputed and only a single inference can reasonably be drawn therefrom, the question of contributory negligence becomes one of law. [Citations omitted.]

The Supreme Court and Appellate Courts have many times recognized the test for 'negligence as a matter of law' to be that negligence which is so clear and palpable that no verdict could make it otherwise. *Town of Albion v. Hetrick* (1883), 90 Ind. 545, 547; *New York, etc., R. Co. v. Hamlin* (1908), 170 Ind. 20, 39, 83 N.E. 343; *Town of New Castle v. Grubbs* (1908), 171 Ind. 482, 496, 86 N.E. 757; *Jenney Electric Mfg. Co. v. Flannery, supra.*

In applying this test both the Supreme and Appellate Courts

have adopted the rule that the voluntary conduct of one exposing himself to dangers which are so obvious, imminent and glaring that no reasonable man exercising due care for his safety would have hazarded them is negligence as a matter of law. *Chicago, etc., R. Co. v. Gallion* (1907), 39 Ind. App. 604, 80 N.E. 547; *New York, etc., R. Co. v. Hamlin, supra; Brazil Block Coal Company v. Hoodlet* (1891), 129 Ind. 327, 27 N.E. 741."

The facts are not in dispute. However, we do not agree that the only reasonable inference from the evidence is that the negligence is so clear and palpable that no reasonable jury could have found otherwise. The testimony of experts and farmers demonstrated that Warken's endgate system for delivering grain was used by other farmers and that his manner of operating the endgate was not unusual. Their opinions differed as to the safety of his endgate system compared to the practicality and safety of alternative grain dumping procedures.

The question of contributory negligence becomes one of law for the court only if it could be said that no reasonable man would have acted as Warken did under the circumstances. *Coleman v. DeMoss* (1969), 144 Ind. App. 408, 246 N.E.2d 483; *Dreibelbis, supra.* In *Coleman* this court discussed this concept of "reasonable man":

"A 'reasonable man', it may be safely said, is not one who traverses the face of this earth with some type of miraculous empathy into the affairs and nature of man and things and who is infallible to the frailities of human perception and reasoning. He is a man which the law has created as a standard and is constructed by the court or jury, from the facts of each case."

The "reasonable man" standard is used to measure whether the person seeking recovery discharged his duty to exercise reasonable care for his own safety. *Hunsberger v. Wyman* (1966), 247 Ind. 369, 216 N.E.2d 345.

Because an activity or conduct is dangerous does not as a matter of law legally result in the conclusion that such conduct or activity was negligent. *Rouch v. Bisig* (1970), 147 Ind. App. 142, 258 N.E.2d 883.

In the present case there was some evidence from which the jury could

reasonably conclude that the danger was not "so obvious, imminent and glaring that no reasonable man exercising due care for his safety would have hazarded [it]." *Stallings, supra.* Therefore, the question of contributory negligence did not become one of law. *See, Lamb v. York, supra.*

Meadowlark also argues that Warken possessed knowledge equal or superior to the knowledge imputed to Meadowlark through its agents, representatives and employees, and that a plaintiff chargeable with such knowledge of the dangers inherent in his conduct may be guilty of contributory negligence as a matter of law.

Indiana courts have approved the rule that a plaintiff is contributorily negligent as a matter of law if his knowledge and appreciation of the dangers, inherent in his enterprise and of the defendant's creation, surpassed or equalled that of the defendant. *Stallings, supra; Hobby Shops, supra; Hunsberger, supra.* By definition, the plaintiff is thereby considered to have failed to use reasonable care.

Warken had the same ability as the representatives of Meadowlark to observe the uncovered auger, and could have had knowledge that it might cause injury. However, there are several facts in the record which give Meadowlark the advantage of a more favorable situation to appreciate as well as know the extent of the inherent dangers in the equipment. Representatives of Meadowlark knew that a man had already been injured in the auger after a fall while delivering grain; they knew that the injury the auger could cause was very severe; and they knew that a guard that had been ordered and fashioned specifically in anticipation of a recurrence of such an accident was available. Warken, on the other hand, was unaware of these facts.

We cannot say as a matter of law that a reasonable man under the circumstances would have had, or should have had, appreciation of the dangers equal to or superior than that of the agents of Meadowlark. The question whether Warken acted as a reasonable man under the circumstances therefore was properly left to the jury.

Meadowlark also argues that Warken was guilty of contributory negligence as a matter of law by selecting a way of delivering the grain known to be dangerous where a safe or safer way of doing the task was

open to him. *See Jenney Electric Manufacturing Co. v. Flannery* (1912), 53 Ind. App. 397, 98 N.E. 424; *Kingan & Co. v. Gleason* (1913), 55 Ind. App. 684, 101 N.E. 1027; *Hamlin, supra.*

This court stated in *Jenney, supra,* at 408-409:

"*[C]ontributory negligence cannot, in all cases, be imputed* to a servant *from the mere fact* that he *chooses the more dangerous way* or method of performing a duty when a safe method or one less dangerous was open to his choice. *If* as a result of the choice, the servant exposes himself to dangers which are *so obvious, imminent and glaring that no reasonable man exercising ordinary care for his own safety would have encountered them, and if there is no room for reasonable minds to differ upon the question,* the court may properly say as a matter of law, that such conduct is negligent. In many cases, however, the question must be one of fact for the jury to be determined according to the circumstances of the case from a consideration of the reasons which prompted the servant to act and the care which he used to avoid the injury which befel [sic] him." (Emphasis added)

The record contains conflicting evidence on the questions whether the adjustable endgate delivery system was dangerous, whether alternative methods were available, and whether the alternative methods suggested would be safer. All the farmers, including Meadowlark's farm manager, testified that they had used the adjustable endgate method for delivering grain. Some evidence indicated it was the only method to adjust the flow of grain from a truck.

Because the evidence is conflicting on the issue of contributory negligence, the trial court again did not err in refusing the motion for judgment on the evidence.

## V.

Meadowlark also contends that it was relieved of any duty to protect Warken against such injury because Warken assumed the risk as a matter of law as an incident of his sharecropping agreement.

The defense of assumed risk differs from the defense of contributory negligence in that:

"Where one voluntarily and knowingly places himself in a certain environment, or undertakes to use a certain instrumentality,

and as a consequence receives an injury, his right to recover therefor may be defeated by the doctrine of the assumption of risk, where the contractual relation exists, or by the doctrine of incurred risk where the relation is noncontractual, even though he may have exercised due care for his own safety in the midst of such environment or in the actual use of such instrumentality. In the midst of such environment or in the actual use of such instrumentality, he may have proceeded negligently or omitted to exercise care for his own safety, and if as a consequence he suffers an injury the principle of contributory negligence would defeat his right to recover therefor. When either of the first two principles defeats an action brought to recover for an injury, it is because of the situation that the person involved voluntarily and knowingly assumes. Contributory negligence defeats him by reason of careless conduct in a given situation." *Pittsburgh, C., C., & S.L. RR Co. v. Hoffman* (1914), 57 Ind. App. 431 at 439, 107 N.E. 315, at 318.

In the case at bar the parties apparently agree that the doctrine of assumed risk applies (rather than incurred risk), based on the landlord-tenant sharecrop agreement which created a contractual relationship.

Where there is no express agreement in the contract that he will assume the risk of certain hazards, the plaintiff is deemed to impliedly contract that he will assume the risk of all incidental and ordinary hazards, and all incidental and extraordinary hazards of which he has notice although not assumed when the employment commenced. *Brazil Block Coal Co. v. Hoodlet* (1891), 129 Ind. 327, 27 N.E. 741.

A determination must first be made whether the hazard presented by the auger was incidental to the work as contemplated by the parties in their contractual relationship. It must also be determined whether it was an ordinary risk of the contractual obligation, or whether it was an incidental hazard which increased the risk of danger in such relationship.

The question is, what ordinary incidental risks were known, understood and appreciated by Warken when he entered into his sharecropping agreement, or what extraordinary incidental risks arose after commencement of the agreement. Not until he began deliveries did Warken see Meadowlark's type of dumphopper and auger system. After making deliveries to the Meadowlark facilities for several years,

Warken became familiar with the equipment. An adult working near visible, exposed, revolving machinery might be taken to understand the risk of entanglement and injury. Warken admitted he knew that corn was often scattered on the ground and that it was slick.

Initially, there appears to be a question of fact as to whether Warken actually knew and appreciated the risk involved. He testified that he did not know any one who had been injured on farm machinery, that he had not thought before his injury about the potential danger involved in the grain receiving equpiment, and therefore, that he did not know or appreciate the risk.

Warken is presumed to know and appreciate the ordinary, incidental and known risks and dangers of his contractual undertaking; and by accepting the contractual obligations he impliedly contracts or consents to assume such risks. If he has actual knowledge and appreciation of additional defects and dangers which are incidental to his service, by voluntarily continuing in such service he impliedly contracts or consents to assume such risks. A hazard which is not connected to his undertaking he is not presumed to either know, understand or appreciate; thus, before he can be found to assume such risk he must have actual knowledge and appreciation of the risk and danger involved. *Brazil Block Coal Co., supra.*

We hold that where the hazard is found to be incidental but extraordinary, the plaintiff's assertion of nonappreciation may also be heard. There also the danger and risk must be actually known and appreciated before it is assumed.

To conclude that Warken assumed any additional or nonincidental risks as a matter of law the trial court was required to find that the evidence was without conflict and led to the sole inference that Warken had actual knowledge of the danger arising from the act or omission of Meadowlark's representatives, that he actually understood and appreciated the risk therefrom, and that he voluntarily exposed himself to it. *Ridgway v. Yenny* (1944), 223 Ind. 16, 57 N.E.2d 581.

When Warken contends that he had no knowledge of the risks or danger that he allegedly contracted to assume, the trial court would

have to determine whether, as a matter of law, his testimony is unbelievable, and then whether he must be taken to know and appreciate the risks and danger because a person of his age, intelligence, capacity and experience in the exercise of ordinary care must know and appreciate such danger.

"Where the evidence on the question of assumed or incurred risk presents an issue of fact that issue is for the jury, but where there is no real dispute in the evidence bearing on the question, it is for the court to say as a matter of law that the plaintiff assumed or incurred that risk." *Pierce v. Clemens* (1942), 113 Ind. App. 65 at 77, 46 N.E.2d 836 at 841.

Even should it be established as a matter of law that Warken knew and understood the risk of just such an injury, we find that there was a substantial issue of fact on the question of whether Warken was acting voluntarily. Thus, assumption of risk was properly sent to the jury.

■ Our Supreme Court stated in *Ridgway*:

"The incurring of the risk must be really voluntary. If the continued exposure to a known risk of injury is due to a lack of reasonable opportunity to escape after the danger is appreciated, or if continuance of exposure to the danger is the result of influence, circumstances, or surroundings, which are a real inducement to continue, the doctrine does not apply, since the exposure is not in a true sense voluntary. [Citations omitted]. The burden of establishing the assumption of the risk is upon the defendant. There is no controversy concerning these principles, but much contention as to their proper application to the facts." 223 Ind. at 22, 57 N.E.2d at 583.

Meadowlark argue that Warken was free to deliver all his grain to any elevator in the area, and quotes from their contract in support thereof:

"F.   Additional items: Tenant is to deliver the landlord's share of the crop to an elevator in the area or to farm storage that might be available in the area."

Warken counters with the argument that he was required to deliver the landlord's share of the crop to the Meadowlark premises when directed to do so by its farm manager, and in support thereof he also quotes from their contract:

"C.   The Tenant agrees to store, at the Landlord's request, as much of the Landlord's share of the crops as possible, using not more than ____ percent of the total space provided by the Landlord in cribs, granaries, or barns on the farm."

Warken and two other sharecropping farmers testified that agents at Meadowlark specified when and how much of its share of the crops was to be delivered to the Meadowlark premises. The farmers followed these specifications, and used the equipment provided therefor, without objection. Thus some evidence supports the assertion that the contract compelled Warken to use the Meadowlark facilities when directed to do so, and there is no evidence that the contract terms were not agreed to or that the agreement was not entered into freely and voluntarily.

One further question remains: whether Warken voluntarily chose to use the dangerous equipment provided at Meadowlark, for reasons which would enhance his own interests, or whether he had no real choice as a result of "influence, circumstances, or surroundings which [were] a real inducement to continue." Because he had agree to deliver to Meadowlark upon its request, it does not follow, as a matter of law, that he knew or had notice that the equipment was unreasonably dangerous, or that he had any choice or alternative but to use what was provided. *See, Kelly v. Fletcher-Merna Co-operative Grain Co.* (1961), 29 Ill. App.2d 419, 173 N.E.2d 855.

We find that the trial court did not err in allowing the jury to consider the question whether Warken assumed the risk of injury by the unguarded auger.

## VI.

Meadowlark next contends that the trial court erred in failing to give its tendered preliminary instruction number 9 and tendered final instructions numbers 2 and 3.

Regarding preliminary instructions, it should be noted that TR. 51(A) is controlling:

"(A)   General instructions at commencement of action. When the jury has been sworn the court shall instruct in writing as to the issues for trial, the burden of proof, the credibility of witnesses, and the manner of weighing the testimony to be received. Each party shall have reasonable opportunity to examine such instruc-

tions and state his specific objections thereto out of the presence of the jury and before any party has stated his case. The court may of its own motion and, if requested by either party, shall reread to the jury all or any part of the instructions so given along with the other instructions given to the jury at the close of the case. The parties shall be given reasonable opportunity to submit requested instructions prior to the swearing of the jury, and object to instructions requested or proposed to be given."

Meadowlark's tendered preliminary instruction 9 states that the defense of assumption of the risk is an issue in the present case; the instruction then proceeds to define the term "assumption of the risk". However, we believe that the substance of the tendered instruction, sufficient to satisfy TR. 51(A), was adequately covered by the court's preliminary instruction number 2, which adequately informed the jury that assumption of the risk was an issue in the case. When the substance of a tendered instruction is adequately covered by instructions actually given by the court, it is not error to refuse the tendered instruction. *Frankfort v. Owens* (1976), 171 Ind. App. 566, 358 N.E.2d 184, and cases therein cited.

Meadowlark also contends that the trial court erred in failing to give its tendered final instructions 2 and 3. Meadowlark's tendered instruction number 2 reads as follows:

"You are instructed that a person to whom two or more courses of conduct are open is required to exercise reasonable care in choosing which course he will purse. One having such a choice is negligent if he fails to act as a reasonable and prudent man by pursuing a course which is dangerous rather than one which is safe or even less dangerous."

The defendant cites the cases of *Chisenall v. Thompson* (1952), 363 Mo. 538, 252 S.W.2d 335, and *Blunk v. Allis-Chalmers Manufacturing Company* (1968), 143 Ind. App. 631, 242 N.E.2d 122, as authority for requiring the giving of this instruction.

We believe that the substance of this instruction was adequately covered by the court's instructions numbers 1, 2, and 7, which sufficiently discussed the defense of contributory negligence and gave a correct definition of negligence and contributory negligence. Therefore, the trial court did not err in refusing Meadowlark's tendered instruction number 2. *Frankfort v. Owens, supra.*

Meadowlark also contends that the court erred in refusing to give its instruction number 3, as amended, which reads as follows:

"When a person knows of a danger, understands the risk involved and voluntarily exposes himself to such danger, that person is said to have 'assumed the risk' of injury."

Again, we believe that the substance of tendered instruction number 3 was adequately covered by the court's instructions 3 and 3A. The court's instruction number 3 is Indiana pattern jury instruction 5.65, with some modifications, which reads as follows:

### "COURT'S INSTRUCTION NO. 3 (5.65)

One who enters into a contract to perform work for another assumes all ordinary risks incidental to the work he is to do and those risks which are obvious and open to observation and can be seen and appreciated by an ordinarily careful and prudent person. However, a person does not assume risks of which he is ignorant and which are not obvious and which cannot be readily seen and appreciated by an ordinarily careful and prudent person."

The court's final instruction number 3A, *inter alia,* states that in determining whether Warken assumed the risk the jury could "consider the experience and understanding" of Warken, whether he "had reasonable opportunity to abandon or leave the grain auger . . .", and whether a person of ordinary prudence, under the circumstances, would have refused to continue, and would have abandoned the grain auger. Since the substance of Meadowlark's tendered instruction 3 was covered by other instructions, it was not error for the court to refuse the tendered instruction. *Frankfort v. Owens, supra.*

### VII.

Meadowlark also argues that the trial court erred in refusing to give its tendered final instructions 4, 5, 6 and 7. Tendered instruction number 4 reads as follows:

"The defendant had no duty to warn plaintiff of any conditions of the premises which were known to plaintiff, nor was there any duty upon the defendant to warn plaintiff of conditions which were open and obvious."

While this instruction may be a correct statement of law under certain circumstances, the issues it deals with are not within the issues

in the case at bar. Meadowlark admits in its brief that this "cause went to the jury on two specifications of negligence and two specifications of negligence only." In its delineation of issues for the jury's consideration, to which Meadowlark refers in the preceding quotation, the trial court limited the issues to the following (final instruction number 1):

"The plaintiff had the burden of proving the following propositions:

First: That the defendant was negligent in one or more of the following particulars:

(a) In failing to provide a protective barrier over the moving parts of the corn auger;

(b) In removing the protective barrier over the corn auger."

Thus, since there was no issue before the jury regarding negligence in failure to give a warning, the court did not err in refusing Meadowlark's tendered instruction number 4. *Sheridan v. Siuda* (1971), 150 Ind. App. 395, 276 N.E.2d 883.

Meadowlark's tenders instruction number 5 reads as follows:

"You are instructed, members of the jury, that Meadowlark Farms, Inc. is not the insurer of the safety of invitees to its premises. The defendant, Meadowlark Farms, Inc., was not under a duty to guarantee or insure the safety of plaintiff while he was in and around the farm premises in question."

Again we must conclude that the substance of the tendered instruction is outside the issues of the case. The fundamental issue, as stressed in the court's instructions, was whether Meadowlark exercised reasonable care under the circumstances. There being no issue of a guarantor or insurer status, the trial court properly refused Meadowlark's instruction number 5.

Meadowlark's tendered instruction number 6 reads as follows:

"If you find by a fair preponderance of the evidence that the defendant supplied plaintiff, Harvey A. Warken, with an unguarded or otherwise dangerous revolving auger shaft and such shaft was an open and obvious danger known and understood by plaintiff, Harvey A. Warken, then, in that event, you would be justified

in finding defendant was not negligent in failing to install or provide a guard over such auger shaft or in failing to otherwise correct such danger known and understood by plaintiff."

We hold that the trial court did not err in refusing the instruction. Even a cursory reading of the instruction reveals that it would likely lead to confusion among the jury. First, the instruction assumes that knowledge and understanding (or lack thereof) on the part of Warken directly affects the question of whether Meadowlark was negligent. The instruction would certainly confuse the issues for the jury, for while Warken's knowledge and understanding were relevant as to Meadowlark's defenses of contributory negligence and assumption of the risk, or possibly as to the issue of proximate cause, such knowledge could hardly affect the existence, *vel non*, of negligence on the part of Meadowlark.

A trial court commits no error when it refuses an instruction which is misleading or confusing. *Arnold v. Parry* (1977), 173 Ind. App. 300, 363 N.E.2d 1055. Therefore, it was not error to refuse Meadowlark's instruction number 6.

Meadowlark also alleges that the trial court committed reversible error in refusing its tendered instruction number 7, which reads as follows:

"If you find by a fair preponderance of the evidence that the defendant supplied plaintiff, Harvey A. Warken, with a grain auger and grain elevating system that constituted a dangerous condition and that plaintiff had knowledge and understood such dangerous condition, you are instructed that the defendant was not negligent in failing to warn the plaintiff of such dangerous condition."

We believe that this instruction was properly refused. First, the instruction tends to confuse knowledge on the part of Warken with negligence on the part of Meadowlark, instead of relating Warken's alleged knowledge to the issues of contributory negligence, assumption of the risk or proximate cause. Additionally, as stated above, the question of Meadowlark's providing a warning was not at issue in the case. Therefore, there was no error in refusing this instruction. *Arnold v. Parry, supra; Sheridan v. Siuda, supra.*

## VIII.

Meadowlark also contends that the trial court erred in restricting its cross-examination of plaintiff Warken. At one point in its cross-examination of the plaintiff, Meadowlark was attempting to question him on various means he might have employed to unload the corn. The apparent thrust of Meadowlark's attempted cross-examination was to show that Warken might have, or should have, considered different methods to unload the corn, and that his failure to take a different course of action was the proximate cause of his injury.

However, while Meadowlark was exploring this line of questioning the trial court restricted the cross-examination, even though the plaintiff made no objection:

"Q-Describe the control for the endgate that you were reaching for at the time of your injury?

A-The endgate is about 18 or 20 inches wide, and it is situated in a slide which slides up and down and you have a handle right in the middle made out of a rod, and there's another rod goes across back there that sort of acts as a hinge, and as you lift up on this handle, that raises, or if you'll push down on it, it lowers the engine.

Q-So one bar, rod that's used to control it?

A-Right.

Q-Is the bar square or round?

A-Round.

Q-What's the diameter of the bar?

A-Oh, I'd say it's approximately an inch.

Q-How long is that bar?

A-Oh, I'd say eight or ten inches.

Q-Have you ever thought about welding an extension on to that bar to keep you from having to reach so far on occasions such as the time you were injured?

A-That'd be a good deal if you could use it because it would give you a lot more leverage to work it up and down, but when you

understand when this truck is over this auger and as you raise the truck bed up, you'd almost shove that rod down in the auger if it was long enough.

Q-Have you ever thought about using a length of pipe that you could slip over that control bar while in use?

> THE COURT: Well, that's speculation. I don't think we're under any obligation here to redesign a piece of equipment. Let's try the case on the facts as you find them.

> MR. SACOPULOS: Is your Honor telling me that I may not proceed this, pursue this line of questioning?

> THE COURT: I'm saying that I don't think it's proper cross-examination to speculate as to what something should have been designed to render, ah, to forestall some, ah, thing that happened. I think it's improper cross—I mean it's improper cross-examination.

> MR. SACOPULOS: I think it's proper, your Honor, had the witness considered it prior to the event.

> THE COURT: It's strictly, it's strictly speculation. It's something subjective that you think that somebody possibly could have done, maybe, to avoid the lawsuit. That's the only thing I can see. Let's proceed with the examination.

> MR. SACOPULOS: Does the Court instruct the witness not to answer that question.

> THE COURT: No, I'm instructing—the Court—only that I'm instructing Counsel that I think it's improper cross-examination for the purpose I—for the reasons I just stated.

> MR. SACOPULOS: May the witness answer the question?

> THE COURT: No.

> MR. SACOPULOS: Thank you, your Honor."

We begin by stressing the well-settled rule that courts have wide discretion in the limitations imposed upon cross-examination. *Stath v.*

*Williams* (1977), Ind. App., 367 N.E.2d 1120. It is also the rule that there is no error where the court limits cross-examination of a witness at one point during the trial, but that witness is subjected to cross-examination, on the desired subject, at another time during the trial. *Pennsylvania Co. v. Marion* (1889), 123 Ind. 415, 23 N.E. 973; *City of Terre Haute v. O'Neal* (1920), 72 Ind. App. 485, 126 N.E. 26.

It should be noted that in the case at bar Meadowlark was allowed, elsewhere during cross-examination, to cross-examine Warken regarding available alternatives. For example, the quotation above shows that Warken was questioned about the possibility of welding an extension onto the endgate bar. On another occasion Warken was asked:

"Q-Why didn't you start the process of unloading corn and go off somewhere and relax and come back and see how it was doing later on?

A-Well, if I had somebody unloading for me, I wouldn't want the corn to run all over the ground either, and I was trying to treat them like I would like to have been treated.

Q-That's normal and usual for farmers unloading grain to stay there while the operation is being conducted, is it not?

A-I can't answer that for someone else, because I never saw anyone else unload there.

Q-Was it normal for you, sir, to stay there while the process is being conducted?

A-Always did, yes.

Q-Now was it unusual to have to adjust the flow of grain coming out of an endgate into a dump hopper while you were unloading?

A-No.

Q-Did you have to generally do that several times in the course of unloading any truck with grain?

A-Yes.

Q-Is it unusual during the course of unloading a truckload of grain for grain to get on the ground around the dump hopper?

A-Well, if they had a real good hopper, it wouldn't be so apt to, I'd say that, because, ah, this tire, you know, is wide, and corn

will hit that rubber tire and bounce out. You'll know what it'll do on a piece of rubber.

＊ ＊ ＊

Q-Had you wanted to could you have either turned the tractor off or put it in neutral to stop the power to the auger at any time?

A-Yes.

Q-And if you did that the auger would have stopped revolving, would it not?

A-Yes.

Q-Had you done that, I think it's your testimony that corn would have overflowed the dump hopper and would have got on the ground?

A-Yes.

Q-And then you would have had to shovel the corn into the dump hopper thereafter?

A-Yes.

Q-You knew you could control the operation of the auger by using the gears on the tractor or on the motor of the tractor before this accident happened, did you not, Mr. Warken?

A-Yes."

We hold that the trial court allowed adequate cross-examination of Warken on the subject in question; therefore, the restriction of cross-examination at one point in the trial does not result in an abuse of discretion. Furthermore, the defendant could have avoided the harm complained of by calling Warken as a defense witness in the defendant's case in chief. *See Terre Haute, I & E Traction Co. v. Stevenson* (1919), 189 Ind. 100, 123 N.E. 785.

Meadowlark further contends that the trial court committed reversible error in the manner in which it limited the cross-examination set out above. Specifically, Meadowlark contends that the comments made by the court in limiting the cross-examination were prejudicial to the point where Meadowlark, in effect, was denied a fair trial. However, we have examined the remarks of the trial court and have found nothing

therein to warrant a reversal. Therefore, Meadowlark must fail in its contention that it was denied a fair trial because of the court's remarks.

## IX.

Meadowlark also contends that the trial court erred in giving the court's final instruction number 14, which reads as follows:

"In this case, Harvey A. Warken was an invitee upon the property of Meadowlark Farms, Inc., the owner.

An owner owes the duty to use ordinary care to maintain his property in a reasonably safe condition suitable for the use of those who come upon it as invitees."

Without contesting that Warken was an invitee on its property, Meadowlark nevertheless asserts that the instruction is erroneous in that it "has the effect of instructing the jury that duty of care is owed to a plaintiff under any circumstance when a plaintiff enters upon an owner's property." Meadowlark argues that this instruction is incorrect because the duty does not extend as to open and obvious dangers.

We disagree with the defendant's argument. The jury was adequately instructed, through the court's instructions numbers 1, 2, 7, 3 & 3A, on the correct legal consequences resulting from Warken's knowledge, or lack thereof, of the dangers involved. The fact that these issues of Warken's knowledge were not incorporated into the court's final instruction number 14 does not make that instruction erroneous. Since the instruction was a correct statement of law, was consistent with plaintiff's theory of the case, and was supported by some evidence, the lower court did not err in giving it to the jury. *See, Allison v. Ely* (1959), 241 Ind. 248, 170 N.E.2d 371.

Finding no reversible error, the judgment is affirmed.

Affirmed.

Lowdermilk and Robertson, JJ., Concur.

NOTE—Reported at 376 N.E.2d 122.